David W. Fassett, Esq. (DWF 1636)
ARSENEAULT FASSETT & MARIANO, LLP
560 Main Street
Chatham, NJ 07928
(973) 635-3366
Attorneys for Plaintiff Felix Garcia

RECEIVED-CLERK
U.S. DISTRICT COURT

2004 FEB 13  P 3: 33

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

FELIX GARCIA,

      Plaintiff,

    v.

COUNTY OF PASSAIC, JERRY
SPEZIALE, individually and in his
official capacity as Passaic County Sheriff,
ROBERT D'ARCO, individually and
in his official capacity as Passaic County
Sheriff's Director of Operations,
HARLEY D. BREITE, individually and
in his official capacity as counsel to
Speziale, and JOHN DOES 1-100,
individually and in their official capacities,

      Defendants

Civil Action No. 04-650(WGB)

**COMPLAINT AND JURY DEMAND**

Plaintiff Felix Garcia ("Garcia"), through the undersigned counsel, by way of Complaint against defendants County of Passaic ("the County"); Jerry Speziale, individually and in his official capacity as Passaic County Sheriff, ("Speziale"); Robert D'Arco, individually and in his official capacity as Passaic County Sheriff's Office's Director of Operations ("D'Arco"); Harley D. Breite ("Breite"), individually and in his official capacity as counsel to Speziale; and John Does 1-100, individually and in their official capacities ("John Does") (collectively, "Defendants), states:

## PARTIES

1. At all relevant times, Garcia was and is a citizen of the State of New Jersey residing at 218 Alps Road, Wayne, New Jersey.

2. At all relevant times, the County was a body politic organized under the laws of the State of New Jersey having an office at 401 Grand Street, Paterson, New Jersey that maintained, and was responsible for, the Passaic County Sheriff's Office ("the Sheriff's Office") and all employees and agents thereof, including without limitation Speziale, D'Arco and John Does.

3. At all relevant times, Speziale was and is a citizen of the State of New Jersey employed by the County in the Sheriff's Office as the Passaic County Sheriff acting within the scope of his employment with, and on behalf of, the County.

4. At all relevant times, D'Arco was and is a citizen of the State of New Jersey employed by the County in the Sheriff's Office as the Director of Operations acting within the scope of his employment with, and on behalf of, the County.

5. At all relevant times, Breite was and is a citizen of the State of New Jersey and an attorney having a law office at 562 Black Oak Ridge Road, Wayne, New Jersey purporting to act as counsel for Speziale regarding matters within the scope of Speziale's employment with the County.

6. Upon information and belief, John Does were and are additional employees and/or agents of the County and the Sheriff's Office who participated in, and are liable for, the claims set forth herein and whose identities are presently unknown to Garcia.

2

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over the federal civil rights claims stated herein under 28 U.S.C. §§ 1331 & 1343(a)(3), and supplemental jurisdiction over the New Jersey statutory and common-law claims stated herein under 28 U.S.C. § 1367.

8. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b) because, on information and belief, all of the defendants reside in this District, and because all of the events material to the allegations set forth herein occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

9. From approximately 1972 through February 2003, the County employed Garcia, a Latino American, in several positions in the Sheriff's Office, including without limitation Warden of the Passaic County Jail from approximately 1994 until December 2001.

10. Throughout the latter period, Garcia served under Passaic County Sheriff Edwin Englehardt ("Englehardt"), a Republican who retired in 2001.

11. In November 2001, Speziale, a Democrat, was elected to replace the retiring Englehardt as Passaic County Sheriff effective January 2002.

12. Before the November 2001 election, Garcia publicly supported Speziale for the position of Passaic County Sheriff notwithstanding his longstanding affiliation with the Republican administration of Englehardt.

13. After winning the November 2001 election, Speziale urged Garcia to retire from his position as Warden of the Passaic County Jail and, because Garcia did not want to retire, promised to employ Garcia as his Undersheriff throughout his tenure as Sheriff.

14. In reliance on Speziale's promise, Garcia reluctantly retired from his position as Warden of the Passaic County Jail in or around December 2001, and Speziale appointed Garcia as his Undersheriff after taking office in January 2002.

15. On or around March 20, 2002, law enforcement agents executed a search warrant at Garcia's home seeking materials regarding certain services that Garcia had lawfully paid off-duty employees of the Sheriff's Office to perform at his home approximately seven years earlier ("the Search Warrant").

16. The Search Warrant arose from an investigation conducted by the New Jersey Attorney General's Office ("the AG's Office") that had commenced years earlier and had targeted individuals other than Garcia.

17. Garcia cooperated fully with the agents executing the Search Warrant.

18. Approximately two days later, on or around March 22, 2002, Speziale caused a subordinate to convey to Garcia that Speziale would terminate Garcia's employment as Undersheriff unless Garcia agreed in writing to take an unpaid "leave of absence" from his employment until the AG's Office confirmed to Garcia that it did not intend to prosecute him.

19. Although Garcia was innocent of any wrongdoing, Speziale's threat of termination coerced Garcia into submitting such a "leave of absence" letter to Speziale that same day.

20. Within days thereafter, Garcia attempted to rescind his coerced, unpaid "leave of absence" and return to work as Undersheriff.

21. Speziale, however, refused to reinstate Garcia and, thereafter, refused to meet with him until on or around July 4, 2002, over three months after Garcia's coerced, unpaid "leave of absence" had commenced.

4

22. At the foregoing meeting, Speziale again told Garcia that he would not reinstate Garcia until the AG's Office confirmed to Garcia that it did not intend to prosecute him.

23. In response, Garcia specifically asked Speziale during that meeting whether a verbal confirmation from the Deputy Attorney General conducting the foregoing investigation ("the DAG") would be sufficient to reinstate him.

24. Speziale replied by assuring Garcia that such a verbal confirmation from the DAG would be sufficient and that he would reinstate Garcia immediately thereafter.

25. Before and after the foregoing meeting, Garcia, through his attorney, continued to cooperate fully with the AG's Office.

26. Following that meeting, Garcia provided the AG's Office with copies of his cancelled checks from seven years earlier confirming that he had paid the off-duty employees of the Sheriff's Office for the services they had performed at his home that were the subject of the Search Warrant.

27. Thereafter, the DAG conducting the investigation verbally confirmed to both Garcia and Speziale that the AG's Office did not intend to prosecute Garcia and that he had recommended to his superiors closing the investigation as to Garcia.

28. Thereafter, on or around August 23, 2002, Speziale told Garcia that he would reinstate Garcia on September 3, 2002 but requested that Garcia first march with him in the Paterson Puerto Rican parade on or around August 25, 2002.

29. Garcia adhered to Speziale's request and marched with Speziale at that parade, and Speziale told the media that Garcia would return to work on September 3, 2002.

30. Thereafter, however, Speziale breached his prior assurances to Garcia by telling Garcia he would not reinstate Garcia until the AG's Office issued a letter confirming the DAG's prior verbal representations that Garcia would not be prosecuted.

31. Accordingly, Garcia was forced to remain on his coerced, unpaid "leave of absence" while he unsuccessfully attempted to obtain such a letter from the AG's Office.

32. When Speziale continued to refuse to reinstate him, Garcia, by letter dated January 27, 2003, again attempted to withdraw the unpaid "leave of absence" to which Speziale had coerced him to agree over ten months earlier.

33. The foregoing letter stated that Garcia would like to return to work on February 10, 2003, two weeks thereafter, and requested Speziale's response, but that date came and went without any response from Speziale.

34. During his coerced, unpaid "leave of absence," Garcia learned that Speziale, since becoming Passaic County Sheriff in January 2002, had taken adverse and/or retaliatory employment actions against numerous other employees of the Sheriff's Office who, like Garcia, are Latino Americans and/or served under the previous Republican administration of Englehart.

35. During that period, Garcia also learned that Speziale had threatened and/or retaliated against Latino community organizations and their leaders.

36. After learning of Speziale's discrimination and retaliation against other Latino Americans, Garcia became involved in planning and promoting a meeting scheduled for February 19, 2003 at which Sheriff's Office employees and County officials intended to discuss various concerns about and objections to Speziale, including without limitation Speziale's discrimination and retaliation against Latino Americans.

37. Shortly before the foregoing meeting was scheduled to occur, Speziale learned of its existence and Garcia's involvement in planning and promoting it.

38. Thereafter, rather than reinstate Garcia from his coerced, unpaid "leave of absence," Speziale instead terminated Garcia's employment altogether in retaliation for Garcia's involvement in planning and promoting the foregoing meeting.

39. By letter dated Sunday, February 16, 2003 ("the February 16 Letter"), Breite, purporting to act as "private legal counsel to Passaic County Sheriff Jerry Speziale," who was copied thereon, informed Garcia that his "services are no longer needed within the Passaic County Sheriff's Department and [his] leave is terminated."

40. The February 16 Letter contained numerous false and malicious allegations against Garcia, including without limitation allegations that the AG's Office had made "preliminary findings" that Garcia had violated the law.

41. The February 16 Letter also referenced confidential materials from Garcia's personnel file, including without limitation a psychological evaluation.

42. Upon information and belief, Speziale and/or Breite thereafter caused the February 16 Letter to be disclosed to the media, which prominently published its false and malicious allegations before Garcia had received it or learned of its existence.

43. For example, the February 20, 2003 edition of *The Herald News* published a story on its front page under the headline "Top aide dismissed for allegedly flouting rules," and the same day's edition of *The Record* published a story at the top of page 3 under the headline "Embattled county undersheriff fired" and the sub-headline "Accused by Speziale of using job for own gain."

44. Both stories referenced the February 16 Letter as "accusing Garcia of using his position for personal gain, making false statements about his background and using county employees and resources to remodel his home." Those and other accusations against Garcia from the February 16 Letter were false and malicious.

45. By letter dated March 17, 2003 ("the March 17 Letter"), D'Arco – acting, upon information and belief, at the direction of Speziale -- requested that the New Jersey Division of Pensions and Benefits ("NJDPB") "make an investigation into" the circumstances surrounding Speziale's termination of Garcia's employment "for the purpose of determining whether or not it is appropriate to forfeit Mr. Garcia's pension, based upon the information contained herein."

46. D'Arco -- acting, upon information and belief, at the direction of Speziale – copied each and every member of the Passaic County Board of Chosen Freeholders, but failed to copy Garcia, on the March 17 Letter to the NJDPB, which had not solicited any such correspondence.

47. Like the February 16 Letter, the March 17 Letter contained numerous false and malicious allegations against Garcia, including without limitation allegations that the AG's Office had "discovered evidence supporting allegations that he utilized Passaic County resources for the purposes of upgrading and beautifying his personal residence, and relied upon and/or used Passaic County employees and County resources to accomplish same."

48. The March 17 Letter also falsely and maliciously stated that this supposed "evidence" had "led to this Department's fostering administrative charges against Mr. Garcia" when, in reality, the Sheriff's Office had never brought any such charges against Garcia.

49. On or about May 8, 2003, Garcia timely served a Notice of Tort Claim notifying Defendants of the claims asserted herein in accordance with N.J.S.A. 59:8-1 *et seq.*

50. As a direct and proximate result of Defendants' conduct, Garcia has sustained damages, including without limitation mental and emotional injuries; injury to his professional and personal reputations; economic damages, including without limitation lost wages, benefits and seniority; and other compensatory, pecuniary and consequential damages, including without limitation legal fees and expenses.

## COUNT ONE
### (Federal Civil Rights Claims against the County, Speziale, and John Does)

51 Garcia repeats and reasserts the allegations contained in paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. Speziale and John Does, acting under color of State law and within the scope of their employment with the County, deprived Garcia of clearly established rights, privileges and immunities guaranteed him by the U.S. Constitution, including without limitation the First Amendment rights to free speech and freedom of association and the Fourteenth Amendment rights to equal protection and due process, in violation of 42 U.S.C. §1983.

53. Speziale and John Does violated the foregoing federal constitutional rights guaranteed to Garcia by, among other actions or inactions, constructively discharging Garcia from his employment with the County in or around March 2002, and actually terminating Garcia from his employment with the County in or around February 2003, because of, and in retaliation for, Garcia's

A. Ethnicity and ancestry as a Latino American, and/or

B. Prior association with the Republican administration of Englehardt; and/or

C. Involvement in planning and promoting the February 19, 2003 meeting between Sheriff's Office employees and County officials.

9

54. Upon information and belief, official unconstitutional policies adopted, and/or unconstitutional customs and usages tolerated, by the County and/or the Sheriff's Office directly and proximately caused Garcia to suffer the foregoing civil rights violations.

55. As a direct and proximate result of the foregoing misconduct, Garcia has suffered, and continues to suffer, damages for which the County, Speziale and John Does are liable.

## COUNT TWO
### (NJLAD Discrimination Claims against the County, Speziale and John Does)

56. Garcia repeats and reasserts the allegations contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. Speziale and John Does, acting within the scope of their employment with the County, constructively discharged Garcia from his employment with the County in or around March 2002, and actually terminated Garcia from his employment with the County in or around February 2003, because of Garcia's ethnicity and ancestry as a Latino American, in violation of N.J.S.A. 10:5-12a.

58. As a direct and proximate result of the foregoing misconduct, Garcia has suffered, and continues to suffer, damages for which the County, Speziale and John Does are liable.

## COUNT THREE
### (NJLAD Retaliation Claims against the County, Speziale and John Does)

59. Garcia repeats and reasserts the allegations contained in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. Speziale and John Does, acting within the scope of their employment with the County, terminated Garcia from his employment with the County in or around February 2003 in retaliation for Garcia's involvement in planning and promoting the February 19, 2003 meeting between Sheriff's Office employees and County officials, in violation of N.J.S.A. 10:5-12e.

61. As a direct and proximate result of the foregoing misconduct, Garcia has suffered, and continues to suffer, damages for which the County, Speziale and John Does are liable.

## COUNT FOUR
### (Public Policy Claims against the County, Speziale, and John Does)

62. Garcia repeats and reasserts the allegations contained in paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. Speziale and John Does, acting within the scope of their employment within the County, constructively discharged Garcia from his employment with the County in or around March 2002, and actually terminated Garcia from his employment with the County in or around February 2003, in violation of clear mandates of public policy prohibiting such adverse employment actions based on ethnicity and ancestry, political association, speech, and/or whistle-blowing activities.

64. As a direct and proximate result of the foregoing public policy violations, Garcia has suffered, and continues to suffer, damages.

## COUNT FIVE
### (Defamation against the County, Speziale, Breite and John Does)

65. Garcia repeats and reasserts the allegations contained in paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66. Speziale, Breite and John Does libeled and defamed Garcia by purposely and recklessly advancing false and malicious allegations against Garcia in the February 16 Letter and disclosing the February 16 Letter to the media, thereby causing the widespread publication of those false and malicious allegations to the public.

67. As a direct and proximate result of the foregoing misconduct, Garcia has suffered, and continues to suffer, damages for which the County, Speziale, Breite and John Does are liable.

**COUNT SIX**
**(Invasion of Privacy against the County, Speziale, Breite and John Does)**

68. Garcia repeats and reasserts the allegations contained in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. Speziale, Breite and John Does improperly and unjustifiably invaded Garcia's privacy by purposely and recklessly referencing confidential materials from Garcia's personnel file, including without limitation a psychological evaluation, in the February 16 Letter and disclosing the February 16 Letter to the media.

70. As a direct and proximate result of the foregoing misconduct, Garcia has suffered, and continues to suffer, damages for which the County, Speziale, Breite and John Does are liable.

**COUNT SEVEN**
**(Defamation against the County, Speziale, D'Arco and John Does)**

71. Garcia repeats and reasserts the allegations contained in paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72. Speziale, D'Arco and John Does libeled and defamed Garcia by purposefully and recklessly advancing false and malicious allegations against Garcia in the March 17 Letter and publishing the March 17 Letter to both the NJDPB and each and every member of the Passaic County Board of Chosen Freeholders.

73. As a direct and proximate result of the foregoing misconduct, Garcia has suffered, and continues to suffer, damages for which the County, Speziale, D'Arco and John Does are liable.

## COUNT EIGHT
### (Emotional Distress against all Defendants)

74. Garcia repeats and reasserts the allegations contained in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. By and through the foregoing conduct, Defendants intentionally and maliciously inflicted severe emotional distress on Garcia.

76. As a direct and proximate result of the foregoing misconduct, Garcia has suffered, and continues to suffer, damages for which Defendants are liable.

## PRAYER FOR RELIEF

WHEREFORE, Garcia demands judgment against Defendants, jointly and severally, for compensatory damages, consequential damages, incidental damages, punitive damages, prejudgment interest, attorneys' fees, costs of suit, and any further relief deemed just and owing.

## DEMAND FOR TRIAL BY JURY

Garcia, through the undersigned counsel, demands a trial by jury on all issues.

ARSENEAULT FASSETT & MARIANO, LLP
Attorneys for Plaintiff Felix Garcia

By: _____
    David W. Fassett

Dated: February 13, 2004