UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELIX GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF PASSAIC, JERRY SPEZIALE, individually and in his official capacity as Passaic County Sheriff, ROBERT D'ARCO, individually and in his official capacity as Passaic County Sheriff's Director of Operations, HARLEY D. BREITE, individually and in his official capacity as counsel to Speziale, and JOHN DOES 1-100, individually and in their official capacities,<br><br>    Defendants. | Civ. No. 04-650 (WGB)<br><br>OPINION |

**APPEARANCES:**

Ronald T. Nagel, Esq.
32 Maple Avenue
Morristown, New Jersey 07960

    Attorney for Defendant Harley Breite

Albert C. Buglione, Esq.
DE YOE HEISSENBUTTEL, LLC
401 Hamburg Turnpike, Suite 206
P.O. Box 2449
Wayne, New Jersey 07474-2449

    Attorney for Defendants County of Passaic
    and Jerry Speziale

BASSLER, District Judge:

    This law suit stems essentially from allegations that the plaintiff, Felix Garcia, a former Undersheriff of the Passaic County Sheriff's Office, was fired because he was Latino

American.  In the employment dispute with Garcia, the Passaic County Sheriff, Jerry Speziale, was represented by attorney Harley Breite, who Garcia is suing along with Speziale and the County of Passaic, for defamation, invasion of privacy and intentional infliction of emotional distress.  Breite brought a crossclaim against Passaic County.  Breite now brings this motion before the Court seeking an order to compel Speziale and Passaic County to indemnify him and to pay for his defense.  In addition to claims for infringement of his civil rights, Garcia also brought claims for discrimination, retaliation and violations of public policy.  Garcia alleges that Jerry Speziale, individually and in his official capacity as Passaic County Sheriff, County of Passaic and Harley Breite, Speziale's counsel (collectively "Defendants") defamed him in a letter sent February 16, 2003 ("February 16 Letter") terminating Garcia's employment as Undersheriff of the Passaic County Sheriff's Office.  Garcia claims that these Defendants also disclosed the letter to the media, thereby causing the widespread publication of false and malicious allegations about Garcia to the public.  Garcia further maintains that the letter contained confidential materials from Garcia's personnel file, including a psychological evaluation.  He argues that he has suffered emotional distress and continues to suffer damages from Defendants' actions.

    Defendant Breite, who authored the February 16 letter, moves

2

to compel Speziale and the County of Passaic to indemnify him on the basis that Breite acted merely as an agent for Speziale in his official capacity as Passaic County Sheriff.

For the reasons stated in this opinion, the Court denies Breite's motion to compel indemnification as it is premature at this posture of the case.

## Jurisdiction and Venue

This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 & 1343(a)(3) and supplemental jurisdiction over the remaining New Jersey statutory and common-law claims pursuant to 28 U.S.C. § 1367.

Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b) because all of the defendants reside in the District and all of the events material to the allegations in the Complaint occurred in the District.

## Background[1]

From approximately 1972 through February 2003, the County of Passaic employed Garcia, a Latino American. Garcia held several positions in the Sheriff's office, including Warden of the Passaic County Jail, which position he held from 1994 to December 2001. During that time, he served under Passaic County Sheriff, Edwin Englehardt, a Republican who retired in 2001. In November

---

[1] The Court draws these facts from Plaintiff's Complaint, the only source of factual information at this juncture of the case, but has identified those facts that Defendants expressly refute.

2001, Speziale, a Democrat, was elected as Passaic County Sheriff effective January 2002 replacing then acting County Sheriff, Ronald Fava.

After winning the election, Garcia maintains that Speziale promised to employ Garcia as his Undersheriff throughout his tenure as Sheriff if Garcia retired as Warden of the Passaic County Jail.  Garcia allegedly complied with Speziale's request, and Speziale appointed Garcia as Undersheriff in January 2002 when Speziale took office.

In March 2002, law enforcement agents executed a search warrant at Garcia's home seeking materials regarding certain payments Garcia made to off-duty employees of the Sheriff's Office for performing services at his home approximately seven years earlier.  The Search Warrant arose from an investigation conducted by the New Jersey Attorney General's Office that had commenced years earlier and targeted individuals other than Garcia.  Soon thereafter, Garcia took a leave of absence without pay as Undersheriff.  Garcia alleges that although he made several attempts to return to his Undersheriff position over the next several months, Speziale refused to allow him to return.  In February 2003, Garcia became involved in planning and promoting a meeting to discuss concerns and objections to Speziale, including Speziale's alleged discrimination and retaliation against Latino Americans.  In a letter dated February 16, 2003, Breite informed

4

Garcia that he had been terminated from the County of Passaic Sheriff's Department.  The letter further stated:

> Also apparent is your misplaced confidence that the Attorney General's Office is done with their investigation.  Your writing "Due to the fact that you were informed by the attorney general office, that the allegations were closed" is nothing more than wishful thinking on your part.  I am certain that the Attorney General's Office is far from finished with their investigation into the past corruption of the Passaic County Sheriff's Department.  However, what is quite clear from their investigation is that not only did you condone the illegal actions of those around you, but you purposefully engaged in a course of conduct contrary to the rules and regulations of the department as well as in violation of the law.
>
> The Attorney General's preliminary findings overwhelmingly demonstrate that you brazenly and continually used your official position for personal gain.  Their initial findings coupled with numerous sworn statements and evidence obtained from the search of your home reveal a continued pattern of exploiting on duty county employees and resources for your own financial gain.  It has also come to my client's attention that there are allegations pertaining to county telephone records indicating phone calls, while on county time, to and from a woman friend of yours who is obviously not your wife.  While this may have been standard operating procedure for you and the previous administration, Sheriff Speziale will in no way tolerate such theft, deception, and immorality from any member of his department.  Ordering county employees, while on county time and using county resources, to perform work on your home and on the business of your spouse is offensive to not only the Sheriff, but to the entire law abiding community as well.  These are the same people who may one day be called to serve as a jury of your peers.

Certification of Harley Breite, Exhibit A at 1-2.  The letter further discussed an inspection of Garcia's personnel file, which revealed "disturbing issues."  The letter noted that Garcia's

"psychological evaluation falls far short from the acceptable standards required to obtain a job with the Passaic County Sheriff's Department."  Breite's letter further conveyed that "[i]t appears that Dr. Robert T. Winston could not have been more correct when he wrote that your 'motivation for the position appears to be strictly the need to be in a 'power role,' to gratify ego needs.'"  Breite concluded the letter by stating that Garcia's "flagrant disregard for the law" was something that the Passaic County Sheriff's Department would not tolerate, threatening to take legal action for slanderous remarks Garcia allegedly made about Sheriff Speziale and offering to open up Garcia's file to the public if he was "so interested in having the community learn about [his] situation."  Garcia further claims that the letter then was disclosed to the media causing the information to be disseminated to the public.

## Discussion

Defendant Breite argues that the Court should compel Speziale and the County of Passaic to indemnify Breite because he wrote the February 16 letter at the direction of Speziale. Breite claims that he was acting solely as the agent of Speziale in his official capacity as Passaic County Sheriff.  Breite relies on <u>Hagen v. Koerner</u>, 64 N.J. Super. 580, 586 (App. Div. 1960) to support his position that "if an agent acts in good faith for his principal under the latter's direction, relying on

6

the principal's representations as to the legal propriety of the act to be done . . . the law requires indemnity from the principal to the agent, for the damages of third persons."  See Breite's Letter Brief ("Breite Ltr. Br.") at 2.  Breite further assumes that because he has based this motion on the agent/principal relationship, which he claims Defendants do not dispute, he is entitled to indemnification.  Breite's Reply Letter Brief ("Breite Reply Ltr. Br.") at 1-2.  Breite's assertion, however, is flawed in that he fails to recognize that establishment of an agent/principal relationship alone is insufficient to compel indemnification.

As a general rule, a third party may recover on a theory of implied indemnity from an employer only when a special legal relationship exists between the employer and the third party, and the liability of the third party is secondary or vicarious.  Ramos v. Browning Ferris Ind. of South Jersey, Inc., 103 N.J. 177, 188-89 (1986)(citing Arcell v. Ashland Chem. Co., 152 N.J. Super. 471, 488-89, 378 A.2d 53, 62-63 (1977)).  An example of a special legal relationship that will support a third party's claim for indemnification includes that of a principal and agent.  Ramos, 103 N.J. at 189 (citing Hagen, 64 N.J. Super. at 586-87) ("where an agent is employed or directed by another to do an act in his behalf, [t]he law implies a promise of indemnity").  To be entitled, however, to indemnification as one who is secondarily

or vicariously liable, a party must be without fault. Ramos, 103 N.J. at 191 (citing Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566 (1980); Schramm v. Arsenal Esso Station, 124 N.J. Super. 135, 138-39, 305 A.2d 83, 84 (App. Div. 1973), aff'd, 63 N.J. 593 (1973); Public Serv. Elec. & Gas Co. v. Waldroup, 38 N.J. Super. 419, 432, 119 A.2d 172, 179 (App. Div. 1977)). Breite's motion seeks to have this Court make two assumptions: 1)that his relationship with Speziale meets the special "agency" relationship as discussed in Hagen and Ramos and 2) that Breite was not at fault for the alleged defamatory letter, which purportedly was disclosed to the media. For the reasons discussed below, the Court finds it inappropriate to make such assumptions without any factual record before it. Thus, Breite's motion is denied.

*Special "Agency" Relationship*

Breite maintains that his relationship with Speziale and County of Passaic is "precisely that agent/principal relationship" to which indemnification is required. Breite Reply Ltr. Br. at 2. While it is evident that an attorney acts as an agent for her client, it is also true that a lawyer, although required to work for her client's benefit, has considerable independence in doing so. Cohen v. Southbridge Park, Inc., 369 N.J. Super. 156, 161, 848 A.2d 781, 784 (App. Div. 2004)(citing Restatement (Third) of The Law Governing Lawyers, Introductory

Note to Chapter 2, The Client-Lawyer Relationship (2000)) (internal citation omitted). Thus, an attorney is both an independent contractor and an agent. Cohen, 369 N.J. Super. at 161 (citing Restatement (Second) of Agency, § 14N (1958)).

In Baldasarre v. Butler, 132 N.J. 278, 291 (1993), the New Jersey Supreme Court noted:

> If the principal is the master of an agent who is his servant, the fault of the agent, if acting within the scope of his employment, will be imputed to the principal by reason of respondeat superior. But there is a vast difference between an **employee agent** and a **non-employee agent**. The non-employee agent is, generally, nothing else but an independent contractor.

(emphasis added). The Court further recognized that the status of an independent contractor is "characterized by the attributes of self-employment and self-determination in the economic and professional sense." Id. These attributes generally define an attorney's relationship to her client, and typically the attorney is not subject to her client's actual control and directions. In fact, most clients hire an attorney for guidance with laws, for which they are unfamiliar. Thus, attorneys generally are deemed responsible for their own acts. Id. at 292. There are instances, however, in which traditional agency principles will apply to an attorney's relationship with her client. Peterson v. Worthen Bank & Trust, 296 Ark. 201, 753 S.W.2d 278 (1988)(applying traditional agency principles and finding client vicariously liable for attorney's torts within scope of

9

employment); Southwestern Bell Tel. v. Wilson, 68 S.W.2d 755, 759 (Tex. App. 1988)(same); see also Lynn v. Superior Court, 180 Cal. App. 3d 346, 347, 225 Cal. Rptr. 427, 428 (1986)(reasoning that attorney is independent contractor in role as trial counsel but may be [employee] agent for business transactions).

At first glance, authoring a termination letter for a client presumably would be the type of task that an attorney would perform at the direction of a client and to which traditional agency principles would apply.  The February 16 letter, however, contains several allegations of misconduct, references Garcia's personnel file and allegedly was leaked to the media.  The letter further suggests that part of the letter was based on Breite's personal knowledge when he proclaimed that "*I* am certain that the Attorney General's Office is far from finished with their investigation into the past corruption of the Passaic County Sheriff's Department." (emphasis added).  Without more information regarding Breite's role in creating the letter and concerning the possible dissemination of the letter to the public, the Court cannot conclude that Breite acted as an employee agent having the type of special legal relationship to Defendants Speziale and County of Passaic to which indemnification should be implied.

*Without Fault*

Even if Breite was acting as Speziale's and thus, the County

of Passaic's agent, he is not entitled to indemnification if he was at fault for the alleged defamatory letter. Stephenson v. Jones, 103 N.J. 194 (1986)("The flaw in the dissent's legal analysis is the notion that even a manufacturer that is primarily liable in tort to an employee may recover indemnification from the employer as long as a special relationship exists between the third party and the employer."); see also Hagen, 64 N.J. Super. at 585-87.  It is well settled under New Jersey law that indemnity may not ordinarily be obtained by a party who has been at fault.  Echevarias v. Lopez, 240 N.J. Super. 104, 572 A.2d 671 (citing Ramos, 103 N.J. at 190-91).  It is the innocent party, whose liability is secondary and arises out of the active wrongful conduct of another who is entitled to indemnity.  240 N.J. Super. at 110 (citing Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960)).  In Echevarias the court ruled that an insurance agent who negligently informed his employer that insureds did not wish to renew their policy and the employer who failed to provide the required statutory notice to the insureds before terminating their policy, could not seek indemnity from the other by virtue of their own independent fault.  Id.; see also Hagen, 64 N.J. Super. at 586 (citing 39 C.J., Master and Servant, § 1516, p. 1315)(It is well settled that there can be no indemnity among joint wrong-doers).  The court in Hagen, however, also recognized:

>    [A]lthough an agent cannot claim reimbursement for
>    losses or liabilities incurred through his own fraud or
>    negligence, [i]f he acts in good faith for his
>    principal under the latter's direction, relying upon
>    the principal's representations as to the legal
>    propriety of the act to be done, though in fact such
>    act by the agent constitutes a tort, the law requires
>    indemnity from the principal to the agent, for damages
>    of third persons, and if, as the result of the acts so
>    performed, the agent is mulcted in damages, the
>    principal must respond to the agent therefor, as well
>    as for the necessary expenses incurred in resisting the
>    claims of third persons who were injured in the
>    transaction.

Hagen, 64 N.J. Super. at 586 (citing 2 Am. Jur., Agency, § 294, pp. 231-232); see also Restatement of the Law, 2 Agency 2d, § 439, p. 329 (1958), comment (c)("If []the agent, at the direction of the principal, commits an act which constitutes a tort but which the agent believes not to be tortious, he is entitled to indemnity to the amount which he is required to pay as damages.")

At this stage of the case, it is impossible to tell whether Breite is at fault for allegedly sending a defamatory termination letter, invading Garcia's privacy by leaking the letter to the media or causing Garcia emotional distress.[2]  In accepting a case, a lawyer agrees to pursue the goals of the client "to the extent the law permits" even when the lawyer believes that the client's desires are unwise or ill-considered.  Ziegelhem v.

---

[2]Although Breite references only the defamation claim in his motion to compel indemnification on the basis that he wrote the February 16 letter at the direction of Speziale, Plaintiff's counsel correctly notes in his letter to the Court dated December 27, 2004 that the Complaint states three causes of action against Breite for defamation, invasion of privacy and intentional infliction of emotional distress.

Apollo, 128 N.J. 250 (1992). At the same time, because the desires of a client generally are influenced largely by the advice the lawyer provides, the lawyer is obligated to give the client reasonable advice. Id. Defendants Speziale and County of Passaic correctly note that a lawyer may not follow the directions of a client without first satisfying herself that the client is seeking a legitimate and proper goal and intends to employ legal means to attain it. See Speziale and County of Passaic Letter Brief ("County Ltr. Br.") at 2 (citing In re Blatt, 65 N.J. 539, 545 (1974)). There is no evidence that Breite satisfied himself that the statements in the February 16 letter were not defamatory before sending it to Garcia or that Breite had no involvement in the purported leak of the letter to the media. More factual information is necessary before the Court can make this determination.

Although Breite relies on Hagen to support his position that this Court can compel the County to indemnify Breite at this juncture of the case, Breite fails to recognize that the Hagen Court refused to make such a determination. The court instead held that "at this posture of the present case, without any factual record before the court, it cannot be determined whether Koerner's conduct, if any, was of the character for which there is no right of indemnity under the general rule." Id. at 587; see also, Prado v. State Dep't of Labor, 376 N.J. Super. 231,

13

239, 870 A.2d 294, 298 (determination of whether Attorney General should be compelled to indemnify state employee who is sued for money damages for act in the scope of employment required "thorough understanding of the factual allegations and legal theories underlying the action."). The <u>Hagen</u> Court only allowed the third party complaint of Koerner, an employee seeking indemnification from his employer, to survive a motion for judgment on the pleadings until more factual information was established.

This Court cannot rule dispositively that Breite is entitled to indemnification based on the facts before it, and Breite's motion is denied.[3]

### IV.  CONCLUSION

For the reasons stated in this Opinion, this Court denies the motion to compel indemnification without prejudice.

An appropriate Order accompanies this Opinion.

    /s/ William G. Bassler

William G. Bassler, U.S.S.D.J.

Dated: October 14, 2005

---

[3] Breite also fails to brief the question of whether the right to indemnification based on an agency relationship requires the County to pay for the costs of his defense.